UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No.  1:06-CR-00064-JR |
| ) | Trial:  December 18, 2006 |
| v.    ) | |
| ) | |
| CHARLES EMOR    ) | |
| ) | |
| *Defendant.*    ) | |

## DEFENDANT CHARLES EMOR'S RENEWED MOTION FOR MISTRIAL

    The Defendant, through his undersigned counsel, hereby renews its motion for a Mistrial.[1] During the trial in the above-captioned matter, the government presented in Court for the very first time, information of what it considered to be a second phase of a conspiracy in which the government now alleges began in 1998 and continued through 1999.  As will be discussed more fully below, this information was not presented to the grand jury and the first time the defense learned of these allegations was during the prosecution's opening statement.  Thus, Mr. Emor was deprived of his constitutional right to be put on notice of the charges against him.  This unfair surprise at trial prejudiced Mr. Emor and should result in a mistrial.

---

[1] During the government's case in chief, the defense moved for a mistrial relating to the introduction of evidence regarding the alleged "Phase I" of the conspiracy.  During oral argument, the government argued for the first time that this evidence was part of the same conspiracy.  The defense argued that it had no notice of these allegations as the time period is outside the scope of the indictment, and that he was being tried on charges that were not presented to the grand jury.  The Court reserved ruling and requested case law.  This motion is in response to that request.

**I. The Defense Had No Notice of Evidence Regarding a "First Phase" of the Conspiracy**

    **a. Legal Standard**

"A defendant is entitled to know what he is accused of doing in violation of the criminal law, so that he can prepare his defense, and be protected against another prosecution for the same offense." *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997). "The general rule that allegations and proof must correspond is based upon the obvious requirements 1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and 2) that he may be protected against another prosecution for the same offense." *Id.* (*citing Berger v. United States*, 295 U.S. 78, 82 (1935)). To ensure that a defendant is not surprised at trial and can adequately prepare his defense, the law provides that he be informed of the charges through the indictment, and provides further mechanisms for seeking additional information through a motion for a bill of particulars and notice of 404(b) evidence.

At trial, during argument regarding the oral motion for mistrial, the government argued that the 1998-1999 activity was all part of the same crime. However, the indictment issued by the grand jury charged Mr. Emor with conspiracy, and substantive counts of mail fraud and receipt of stolen property based on the conspiracy that allegedly occurred from December 2000 through May 2002.[2] Had the 1998-1999 activity all been part of this crime, as the government would have this Court believe, then Mr. Emor, at the time of the indictment, was not protected from additional prosecution for this same offense. He still faced possible substantive charges of mail fraud and receipt of stolen property based on alleged shipments in 1998-1999. Thus, according

---

[2] For reasons that are not known to the defense, on the day of trial, just prior to opening statements, the government dismissed all substantive counts in the indictment leaving only the alleged conspiracy between December 2000 and May 2002.

2

to the authority cited herein, this could not have been the same crime as Mr. Emor was not protected from subsequent prosecution at the time the indictment was issued.

Federal Rule of Criminal Procedure 7 requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7. The purpose of an indictment is to put a defendant on notice regarding the charges pending against him, and the only mechanism for broadening the charges included in the indictment is through seeking an amendment from the grand jury. *Stirone v. United* States, 361 U.S. 212, 215-16 (1960) ("After an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.").

In order to ensure that the defense is fully informed of the charges in the indictment, the defense may seek a bill of particulars from the prosecution. *See* Fed. R. Crim. P. 7(f). In the instant case, the defense filed a motion for a bill of particulars in advance of trial to ensure it had all information relating to the charges pending against Mr. Emor. (*See* Docket Entry 23.) In that motion, the defense specifically requested particular information to identify the number of shipments of computers received by Mr. Emor, the locations to which those computers were shipped, and the names used on those shipments. No bill of particulars was ever received.

In addition, the defense may also seek notice of any 404(b) evidence the prosecution plans to introduce throughout trial so that it will have notice and be prepared to defend against any other crimes which may be properly introduced. *See* Fed. R. Evid. 404(b). Here, Mr. Emor requested notice of all 404(b) evidence. (*See* Docket Entry 24.) The government unequivocally stated that it would not be introducing any 404(b) evidence at trial. (*See* Docket Entry 26, "The government does not intend to introduce any 404(b) evidence."). In reliance on the time period alleged by the grand jury in the Indictment and the government representations that no 404(b) evidence

would be presented, the defense prepared for and was ready to try a case based on an indictment beginning in December 2000 and ending in May 2002.

    **b.**    **Facts**

In the instant case, the indictment informed Mr. Emor that he was facing charges stemming from an alleged conspiracy that existed from between December 2000 until about May 2002. (*See* Indictment ¶ 7.) This is consistent with the testimony that was presented by Postal Inspector Newman before the grand jury, which was provided to the defense approximately one week prior to trial as part of the government's obligations pursuant to *Jencks* and Rule 16:

> Q: During your previous testimony, I believe that you described the term of that conspiracy of May of 2001 through May 2002. Since the date of your last testimony, have you conducted any further investigation that would cause you to expand the dates that conspiracy was in fact in progress?
>
> A: Yes, I have. I have done a closer review of Charles Emor's bank records, and it seems that there was a payment to Michael Ralph for computers in December of 2000.
>
> Q: And as a result of that finding, has that changed – has that provided any evidence to you about an earlier date that the conspiracy might have begun?
>
> A: Yes, it has.
>
> Q: And what is that date?
>
> A: That would be December of 2000.

(*See* March 7, 2006, Newman Gr. Jury Testimony, at 2-3, attached hereto as Ex. 1.)

This timeframe is also consistent with the Statement of Offense signed by alleged co-conspirator Orlando Marshall, and sworn to before Judge Kennedy, in connection with his plea agreement. *See* Marshall Statement of Offense, attached hereto as Ex. 2. In that statement, he indicates that he introduced Mr. Emor to Mike Ralph in the latter part of 2000, which is the same timeframe presented to the grand jury by Inspector Newman. Thus, the defense clearly had no

4

notice that there was any "Phase I" to this alleged conspiracy, much less that Mr. Emor had any involvement in that Phase.

Just prior to trial, the government produced a Memorandum of Interview of Dwayne Simmons ("MOI") dated May 18, 2006. The MOI indicates that Simmons said he and Mike Ralph were involved in stealing some Gateway computers in 1998 by utilizing a glitch in Gateway's shipping system. During that interview, he also indicated that he became nervous about being caught and stopped stealing the computers and does not believe that many were shipped during that time period. *See* MOI at 1-2, attached hereto as Ex. 3. There is no indication in this MOI that Mr. Emor had any knowledge of this activity, that he was in any way involved in this activity, or that he was ever shipped any computers during this time period. As a matter of fact, the Simmons MOI which indicates that only a few computers were shipped during this time period is completely contrary to testimony and argument at trial indicating that Mr. Emor received nearly 100 computers in this time period. Without prior notice of these allegations, there is no way the defense could have anticipated these arguments and prepared to defend these allegations.

Much to the surprise of the defense, during Opening Statements the prosecution referenced a "Phase I" portion of the conspiracy which the prosecution, not the grand jury, alleged existed in 1998-1999, and argued that Mr. Emor received approximately 100 computers during this Phase. The Prosecution then indicated that he received additional computers during "Phase II," which is the time period indicated in the Indictment, and the only time period for which the defense received any information relating to Mr. Emor. The defense never received any discovery related to computers received by Mr. Emor during this alleged "Phase I". In fact, the only discovery it received relating to any computers allegedly received by Mr. Emor at all was a

5

summary chart listing shipments of boxes. The underlying documents had been destroyed prior to the indictment of this case, so it was never clear what was in the boxes or the exact number of computers received by Mr. Emor. However, based on this summary chart, the defense estimated that the government would argue that Mr. Emor received approximately 50-60 computers between December 2000 and May 2002, the time period alleged in the indictment. Thus, after the government's opening statement, the defense was surprised to learn it was defending charges that involved a time period that began two years prior to the period in the indictment, yet it had been given no notice of such allegations.

This surprise was compounded when Mike Ralph testified that during the first phase of the conspiracy, Mr. Emor was his biggest client. (*See* Ralph Tr. at 13:12-14, attached hereto as Ex. 4.) The defense objected and moved to strike all testimony related to this first phase as it was not part of the conspiracy, but the objection was overruled. (*See* Ralph Tr. at 16:5-9, at Ex. 4.) Similar testimony was presented by Orlando Marshall, another alleged co-conspirator, again over the objections of the defense.

Thus, allowing argument and testimony about computers Mr. Emor received in the so-called "Phase I" of the conspiracy, which allegedly occurred from 1998-1999, broadened the indictment, resulted in unfair surprise at trial and violates Mr. Emor's constitutional rights. "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered

away until is value is almost destroyed." *Stirone*, 361 U.S. at 216 (*citing Ex parte Bain*, 121 U.S. 1, 10 (1887)).

### II. The Admission of the Evidence Is Also Grounds for a Mistrial as Improper 404(b) Evidence

A mistrial should additionally be granted on the basis that this was improperly admitted 404(b) evidence. Since the defense clearly had no notice of this alleged "Phase I" conspiracy through the Indictment, the only argument that could be made for the introduction of these other crimes would be through Rule 404(b). Federal Rule of Evidence 404(b) describes when it is proper to admit evidence of other crimes, wrongs or acts and provides that "the prosecution in a criminal case shall provide reasonable notice in advance of trial…of the general nature of any such evidence it intends to introduce at trial." Fed. R. Evid. 404(b). As discussed, *supra*, the defense requested notice of all 404(b) evidence the government was planning to introduce at trial, and the government responded that it would not be introducing any.

This evidence is not part of the same conspiracy as it is outside the time frame included in the indictment, was not submitted to the grand jury and did not protect Mr. Emor from subsequent prosecution for the same alleged crimes. Thus, it constitutes 404(b) evidence.

The prejudicial impact of introducing 404(b) evidence without providing notice to the defense in this case is so great as to afford Mr. Emor a mistrial. "The decision whether to grant a mistrial generally rests within the sound discretion of the trial court, and the single most important factor in making that determination is the extent to which the defendant has been prejudiced." *United States v. Eccleston*, 961 F.2d 955, 959 (D.C. Cir. 1992) (*citing United States v. Tarantino*, 846 F.2d 1384, 1413 (D.C. Cir. 1988)).

In this case, the prejudice is clear. The defense requested notice of all 404(b) evidence to prepare for trial, and was informed that there was none. Thus, a defense was prepared based on the evidence provided throughout discovery. At trial, over the strenuous and repeated objections of the defense, the government proceeded to introduce evidence of an additional 100 computers received by Mr. Emor outside the scope of the indictment, which is more computers than was alleged he received during the time period of the indictment. The government had an obligation to give the defense notice of these other acts when it sought notice of all 404(b) evidence.

The prejudicial nature of this evidence pervaded the entire trial, as it was introduced during the government's opening statement, repeated in its closing, and at least two government witnesses testified regarding this so-called "Phase I." Thus, Mr. Emor was denied a fair trial based on the government's failure to provide notice of the 404(b) evidence it planned to introduce.

## **CONCLUSION**

Based on the foregoing, it is clear that during trial the charges in Mr. Emor's indictment were broadened, and he was forced to defend charges of which he had not been given notice. This resulted in an infringement of Mr. Emor's constitutional right to be provided notice of the charges against him. Because this fundamental right was denied, a mistrial should be granted.

Dated: January 3, 2007                Respectfully Submitted,

                        /s/
William R. Martin  (D.C. Bar # 465531)
Shawn M. Wright (D.C. Bar # 458377)
Kerry Brainard Verdi (D.C. Bar #478486)
**Blank Rome LLP**
600 New Hampshire Avenue, N.W.
Washington, DC 20037
Ph: (202 772-5800
Fax: (202) 772-5858

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>)<br>CHARLES EMOR )<br>)<br>          *Defendant.* )<br>) | Criminal No. 1:06-CR-00064-JR<br>Trial Date: December 18, 2006 |

**[Proposed] ORDER**

Upon consideration of Defendant's Motion for Mistrial, and good cause demonstrated, it is hereby ORDERED that a Mistrial with Prejudice is granted and the judgment against the defendant is hereby vacated.

 

                                                 U.S. District Court Judge