UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Cr. No. 06-64 (JR) |
| v. : | |
| : | Trial: December 18, 2006 |
| CHARLES EMOR : | |
| : | Sentencing: March 16, 2007 |
| Defendant. : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S RENEWED MOTION FOR MISTRIAL**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's renewed motion for mistrial. The defendant intentionally waived his variance argument when he chose not to provide the Court with the requested case law during trial. The defendant did this because he believed that it was to his strategic advantage to leave testimony about the first phase of the conspiracy in play. Even had the defendant provided relevant case law at an appropriate time, there was no fatal variance from the indictment regarding the starting date of the charged conspiracy because the defendant was well-aware of the earlier date, was not deprived of his constitutional rights, and was not prejudiced by the admission of this evidence.

**I. Summary Of Relevant Facts**

In March 7, 2006, a grand jury indicted the defendant and Dwayne Simmons in a six-count indictment charging them with one count of conspiracy to commit mail fraud, three counts of mail

fraud and two counts of receipt of stolen property. Exhibit 1 (Indictment). Starting in late 1998, the defendant, Simmons, Michael Ralph, Orlando Marshall[1] and others were involved in a conspiracy to buy and sell brand-new, stolen Gateway computers that Simmons, a Gateway employee, redirected directly from the Gateway Manufacturing Plant in Hampton, Virginia. The conspiracy started shortly before, Marshall introduced the defendant to Ralph in late 1998/early 1999. The defendant then did all of his illegal business through Ralph.

According to the indictment, this conspiracy ran "[f]rom between in or about December, 2000, until in or about May, 2002." This was the only period of time for which the government had documented evidence of sales, purchases and deliveries among the conspirators. The overt acts specifically describe conspiratorial acts between December 2000 and May 2001 that involved the defendant.

In June, 2006, months before the trial, Simmons agreed to cooperate with the government, pled guilty in open court[2] to one count of conspiracy to commit mail fraud and the remaining counts were dismissed. During these plea negotiations, the government learned for the first time that the conspiracy started as early as late 1998. On October 30, 2006, more than a month and a half before trial, the government provided the defendant with Simmons' plea agreement in which Simmons adopted a statement of offense which indicated that the conspiracy started before the dates listed in the indictment Exhibit 2 (Simmons' statement of offense). According to Simmons' statement of facts:

---

[1] Marshall and Ralph pled guilty to one-count of conspiracy to commit mail fraud pre-indictment.

[2] Whereas Ralph's plea was under seal, Simmons' plea was public and the defendant was fully aware that Simmons was pleading guilty and cooperating with the government.

> In 1999, while I was employed as a Shipping Supervisor, I learned that I could divert computers and peripheral components from the Gateway plant in Hampton, Virginia. Shortly thereafter, although I cannot remember the exact date, I began taking names and addresses from my long-time friend [Ralph] of individuals interested in purchasing stolen Gateway computers. . . . I know that many of the computers went to middle men, [Emor and Marshall].

Similarly, on December 11, 2006, a week before trial, the government provided the defendant with early Jencks which included the Postal Inspection Memorandum of Interview ("MOI") for Simmons. Exhibit 3 (Simmons' MOI). According to the MOI, the conspiracy started sometime around 1998.

During its opening statement[3], the government described the conspiracy as starting in 1998, running for about a year, taking a brief respite because Simmons became concerned that they would be caught and starting up again in December 2000 with the same individuals involved in the same illegal acts throughout. The defendant did not object to any part of the opening. Clearly aware that the government would be presenting evidence of the conspiracy starting in 1998, the defendant stated the following during his opening statement: "The evidence will establish that in 1998, Simmons and Ralph agreed to steal computers. Mr. Emor did not know Ralph and Simmons in 1998 . . . Around 1999 Emor and Marshall bump into each other. Marshall says, 'I have a cousin who works at Gateway who can get you a good discount.' Emor responds, 'Great. Have him give me a call.'"

During Ralph's testimony the next day, the defendant objected for the first time. The Court asked the parties to provide it with case law before it would make a ruling.[4] The defendant, his three

---

[3] Any statements about statements made during the trial are based on the government's notes. Unfortunately, the government was unable to obtain a trial transcript prior to filing this opposition.

[4] It is stunning for the defendant to argue, in a footnote no less, that the timing of his motion is consistent with the Court's request. The government understood that the Court expected a response prior to the case going to the jury. The government had researched the issue and was prepared to argue much as it does in this opposition. The government saw how the

well-respected attorneys, and their well-respected law firm had more than enough time to provide the Court with case law if they actually wished to raise the issue again. Instead, the defendant clearly realized that his best impeachment came by attacking Ralph and Marshall for failing to mention that the conspiracy began in 1998 during their interviews with law enforcement and their subsequent pleas. In fact, because the statement of facts adopted by Marshall under oath during his plea incorrectly stated that the conspiracy began in 2000, the defendant convinced the Court to give the jury a perjury instruction. This strategy was also clear when the defendant had a redacted[5] version of Marshall's statement admitted into evidence and sent back with the jury. Exhibit 4 (Marshall's statement of fact as redacted).

The indictment sent back with the jury only stated that the defendant was being charged for the conspiracy that ran from on or about December 2000 through May 2002. The only physical evidence admitted during the trial identifying a date for the conspiracy was checks to and from the defendant dated between December 2000 and May 2002. The defendant was charged and convicted for his involvement in this second phase of the conspiracy. If the defendant truly felt prejudiced by the admission of testimony regarding the first phase of the conspiracy, he had more than ample time to re-raise this issue with requested case law if he did not feel that it was to his advantage to intentionally drop the issue.

---

defendant was using the initial phase to his strategic advantage during the trial and understood that the defendant was knowingly waiving his prior objection.

[5] The parties agreed to this redaction. The parties were unable to agree to the redaction of the defendant's tax forms and had to seek a ruling from the Court which ultimately ruled that they too were to go back to the jury in a redacted form.

## II. The Court Should Deny The Defendant's Waived Motion

**A. The Defendant Made A Strategic Decision To Waive His Variance Argument When He Chose To Drop The Issue And Ignore The Court's Request For Supporting Case Law**

The Defendant's failure to fully raise the issue prior to conviction was a strategic decision that cannot now be overcome by seeking a mistrial. In U.S. v. Johnson, 562 F.2d 649 (D.C. Cir. 1976), the Court denied the defendant's *habeas* petition because the defendant, through counsel, made a strategic decision not to raise the issue of a statement made without Miranda warnings at trial. The defendant had full opportunity to object to the admissibility of this statement during trial, but the Court found that the failure to do so was a "calculated piece of business" done "'for strategic reasons.'" Id. at 651. See Also, U.S. v. Smith, 459 F.3d 1276, 1300-03 (11th Cir. 2006) (Analyzing the state of the law and holding that plain error analysis should be used where it appears that defense counsel chose not to object for strategic reasons).

In the case at bar, the defendant had multiple opportunities to provide the Court with case law purportedly supporting its view that testimony of the conspiracy starting in 1998 was prejudicial, but decided to remain silent. Because the defendant knowingly and intelligently waived this potential objection, he should not now be permitted to raise this issue post-conviction to remedy a failed trial tactic.

**B. There Was No Fatal Variance From The Indictment**

**1. A Variance in Just the Starting Date of the Conspiracy Did Not Prejudice the Defendant**

The indictment indicated that the conspiracy started in December 2000 when it in fact started in late 1998. Such a variance is not cause for a mistrial unless the defendant can show prejudice. "'[A] variance will not warrant dismissal except upon a showing of prejudice." Ingram v. U.S., 592

A.2d 992, 1006 (D.C. Cir. 1991) quoting <u>Gaither v. U.S.</u>, 413 F.2d 1061, 1071 (1969).

Here, none of the defendant's substantive rights were affected by the variance in date. First, based on the defendant's opening statement, it is clear that he was fully aware that the government intended to present evidence that the conspiracy began in 1998. Second, the defendant had complete knowledge of the charges he faced because the uncharged phase of the conspiracy was identical to the charged phase except for an earlier start date. Third, the defendant was able to prepare an effective defense to the charges he faced because he only faced charges relating to the second phase. And Fourth, the defendant could not have been charged with just the first phase of the indictment because the statute of limitations ran on it in late 2005.

### 2. Time is Not a Material Element of the Charge of Conspiracy

A variance between the time specified in the indictment and proved at trial "should be disregarded" so long as time is not a material element of the offense and the "variance does not affect substantial rights." <u>U.S. v. Laykin</u>, 886 F.2d 1534, 1543 (9th Cir. 1989). Time is not a material element of an 18 U.S.C. Section 371 conspiracy. See <u>U.S. v. DeBrouse</u>, 652 F.2d 383, 391 (holding that time is immaterial unless specified in the statute). The defendant has failed to show any substantive right that was affected by testimony concerning the first phase of the conspiracy. "Adequacy of notice is not measured in technical pleading terms but by a pragmatic inquiry by the trial judge into whether on the facts of the case the defendants knew what they are defending." <u>U.S. v. Cochran</u>, 697 F.2d 600, 604-5 (5th Cir. 1983). When the indictment charges that a crime occurred "on or about" a date, it is understood that there is some uncertainty as to the specific date. <u>Id</u>. See Also, <u>U.S. v. Paredes-Rodriguez</u>, 160 F.3d 49, 55 (1st Cir. 1998) (Held that variance between indicted date of November 15, 1995 and trial evidence of November 2, 1995 immaterial); <u>U.S. v.</u>

McKinney, 954 F.2d 471 (7th Cir. 1992) (indictment identified conspiracy began on September 1 but evidence was introduced showing it began in June), Cochran at 603-604 (variance not fatal when indictment charged conspiracy began on November 1, but proof was introduced that conspiracy actually began on September 11); and U.S. v. Tunnell, 667 F.2d 1182, 1186 (5th Cir. 1982) (Evidence of conspiracy starting in October 1973 admissible though defendant charged with bribery on March 2 or 3, 1974).

**C. Evidence Of The Conspiracy Starting In 1998 Was Not 404(b) Evidence**

Under Federal Rule of Evidence (FRE) 404(b), evidence of other crimes, wrongs, or acts may be admissible if offered for purposes unrelated to the defendant's propensity to commit crime. U.S. v. Alexander, 331 F.3d 116, 125 (D.C. Cir. 2003). Examples of such evidence include: "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. However, FRE 404(b) applies only to "extrinsic evidence of other crimes and not to intrinsic evidence of the same crime." Id. (*citing* U.S. v. Bowie, 232 F.3d 923, 927-929 (D.C. Cir. 2000)). For example, continuous possession of the same illegal firearm is considered a single offense not a series of crimes. Alexander at 125 (*citing* U.S. v. Towne, 870 F.2d 880, 886 (2nd Cir. 1989)).

"[I]f evidence is offered as direct evidence of a fact in issue, not as circumstantial evidence requiring an inference regarding the character of the accused, 'it is properly considered intrinsic.'" Alexander at 126 (internal citations omitted).

In the present case, the evidence of the initial phase was "direct evidence of a fact in issue." The fact in issue was whether the defendant was involved in a conspiracy involving stolen Gateway computers from December 2000 through May 2002. The evidence was not offered to show the

defendant's general propensity to enter into conspiracies. It was offered to show he was involved in the charged conspiracy at its inception and his continued involvement during the time charged in the indictment.

### III. Conclusion

The court should deny the defendant's renewed motion for mistrial because the defendant made a strategic decision to waive any argument on this issue that he may have had. Regardless, evidence of the conspiracy starting in 1998 did not create a fatal variance because the defendant was not prejudiced by evidence of the conspiracy's earlier start date.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By:_____
ROY L. AUSTIN, JR.
Assistant United States Attorney
Fraud and Public Corruption Section
CA Bar #211491
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 353-9458

### CERTIFICATE OF SERVICE

I hereby certify that a copy of this pleading was faxed to the attorneys for the defendant, William R. Martin, Shawn M. Wright and Kerry Brainard Verdi, Blank Rome LLP, 600 New Hampshire Avenue, N.W., Washington, D.C. 20037, and Danny C. Onorato, Schertler & Onorato LLP, 601 Pennsylvania Avenue NW, North Building, 9th Floor, Washington, D.C. 20004, this 23rd day of January 2007.

_____
Assistant United States Attorney