## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

### Holding a Criminal Term
### Grand Jury Sworn in on September 30, 2004

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| | :    Cr. No. 06-       (HHK) |
| v. | :    GJO |
| | : |
| | :    **Violations:** |
| DWAYNE SIMMONS, | :    18 U.S.C. § 371 |
| CHARLES EMOR | :    (Conspiracy to Commit Mail Fraud); |
| | :    18 U.S.C. § 1341 |
| Defendants. | :    (Mail Fraud); |
| | :    22 D.C. Code § 3232 |
| | :    (Receiving Stolen Property). |
| | : |

### INDICTMENT

The Grand Jury charges that:

### COUNT ONE – CONSPIRACY

At all times material to this Indictment:

1.    Gateway Computers ("Gateway") manufactured personal computers and related components for businesses and individuals. Gateway maintained a manufacturing and distribution plant in Hampton, Virginia. Gateway shipped personal computers and related components (referred to collectively herein as "computers") throughout the United States from its Hampton facility via the United Parcel Service, an interstate commercial mail carrier.

2.    Defendant DWAYNE SIMMONS worked at Gateway as a shipping clerk. SIMMONS lived in the Hampton, Virginia, area.

3.    Defendant CHARLES EMOR was the director of the Sunrise Academy, a school located at

1

EXH #1

1130 Sixth Street, N.W, Washington, D.C. EMOR resided in Maryland.

4.    M.R. was a close friend of SIMMONS and also was acquainted with EMOR. M.R. also resided in the Hampton, Virginia, area.

5.    Orlando Marshall was M.R.'s cousin. Marshall lived and worked in the District of Columbia.

6.    Abdul Jalloh was a co-worker of Orlando Marshall's. Jalloh worked in the District of Columbia and resided in Maryland.

The Conspiracy

7.    From between in or about December, 2000, until in or about May, 2002, in the District of Columbia and elsewhere, defendants SIMMONS and EMOR, together with Marshall, M.R., Jalloh and others whose identities are known and unknown to the Grand Jury (sometimes referred to as "co-conspirators") did unlawfully and knowingly combine, conspire, confederate and agree together and with each other to commit the offense of Mail Fraud against the United States, in violation of 18 U.S.C. § 1341.

The Goal of the Conspiracy

8.    The goal of the conspiracy was to obtain money by stealing Gateway computers from the Hampton distribution facility and selling them throughout the District of Columbia, Maryland, Virginia and elsewhere.

Manner and Means of the Conspiracy

9.    In order to achieve the goal of the conspiracy, defendants SIMMONS and EMOR, together with M.R., Marshall, Jalloh and others whose identities are known and unknown to the Grand Jury, used the following manner and means, among others:

    a.    SIMMONS, together with others whose identities are known and unknown to the

2

Grand Jury, diverted computers from Gateway's Hampton facility and arranged for the diverted computers to be sent either directly to customers that the co-conspirators had recruited or to Marshall.

b.    M.R. acted as a liaison between the customers that he, Marshall and the other co-conspirators recruited and SIMMONS. M.R. provided SIMMONS with the recruited customers' names and addresses, as well as the specifications of the type of computer that they wished to purchase so that SIMMONS, together with others whose identities are known and unknown to the Grand Jury, could steal the computers from Gateway.

c.    EMOR placed orders for stolen Gateway computers with M.R. and, subsequently, received multiple shipments of stolen Gateway computers via the United Parcel Service at both an address in Maryland adjacent to his home and at the Sunrise Academy in Washington, D.C. EMOR then re-sold many of the computers that he received.

d.    Marshall identified people in the Washington, D.C., area who wanted to purchase Gateway computers. Among the people that Marshall identified as a customer was co-conspirator Jalloh.

e.    Marshall also arranged for his recruited customers to receive stolen Gateway computers. He did this in two ways. Marshall either put the customers in contact with M.R. so that M.R. could take the customers' order and receive payment, or Marshall personally accepted orders for Gateway computers and received payment in full from the customers for the computers. Marshall then informed M.R. of the type and quantity of computer that his recruited customers wanted to purchase. From time to time, Marshall accepted delivery of stolen Gateway computers at his Washington, D.C., home on behalf of the co-conspirators' recruited customers. Marshall then would

3

deliver the computers to the customers.

  f.  Jalloh purchased a stolen Gateway computer for himself, recruited additional people who wanted to purchase computers, and placed orders for stolen computers through Marshall.

<strong>OVERT ACTS</strong>

10.  Within the District of Columbia, and elsewhere, in furtherance of the above-described conspiracy and in order to carry out the objects thereof, defendants SIMMONS and EMOR, M.R., Marshall, Jalloh and others known and unknown to the Grand Jury committed the following overt acts, among others:

  a.  In or about December, 2000, M.R. told SIMMONS that EMOR wanted to purchase one or more stolen Gateway computers.

  b.  SIMMONS, together with others whose identities are known and unknown to the Grand Jury, subsequently caused one or more Gateway computers to be stolen from the Hampton, Virginia, facility and shipped to EMOR via the United Parcel Service, an interstate commercial mail carrier.

  c.  In or about December, 2000, M.R. received a check for $1800.00 from EMOR in payment for stolen Gateway computers.

  d.  In or about May, 2001, EMOR and M.R. agreed that M.R. would procure four stolen Gateway computers for EMOR.

  e.  Subsequently in May, 2001, the exact date being unknown to the Grand Jury, M.R. caused SIMMONS and others whose identities are known and unknown to the Grand Jury to steal four Gateway computers from the Hampton facility and send two of them to the Sunrise Academy, the Washington, D.C., school that EMOR directs, and two of them to an address in Maryland

4

adjacent to EMOR's home. Both shipments were addressed to Charles Emor. The stolen computers were shipped via the United Parcel Service, an interstate commercial mail carrier.

f.    On or about May 29, 2001, EMOR received the four stolen Gateway computers at the Sunrise Academy and at the Maryland address adjacent to his home.

g.    In or about July, 2001, M.R. entered into an agreement with Marshall to market and sell stolen Gateway computers in the District of Columbia and elsewhere.

h.    In or about July, 2001, Marshall told M.R. that he had recruited a customer for two stolen Gateway computers.

i.    Later in July, 2001, although the exact date is unknown to the Grand Jury, M.R. caused SIMMONS and others whose identities are known and unknown to the Grand Jury, to steal two Gateway computers and ship them to Marshall for the purpose of re-selling the computers to the customer that Marshall had recruited.

j.    In or about July, 24, 2001, Marshall received a shipment of two stolen Gateway computers at his home address of 103 G Street, S.W., Washington, D.C. These computers were sent to Marshall's house via the United Parcel Service, an interstate commercial mail carrier.

k.    Contemporaneously with the July 24, 2001, shipment of two stolen Gateway computers, although the exact date is unknown to the Grand Jury, Marshall accepted payment for these two computers from the recruited customer. Marshall shared these proceeds with M.R. who, in turn, shared the proceeds with SIMMONS.

5

l.      Contemporaneously with the payment described in paragraph 10(k), although the exact date is unknown to the Grand Jury, Marshall delivered the two stolen Gateway computers that he had received on July 24, 2001 to the recruited customer.

**(Conspiracy, Aiding and Abetting, Causing an Act to be Done,
in violation of Title 18, United States Code, Sections 371 and 2.)**

**COUNTS TWO THROUGH FOUR – MAIL FRAUD**

11.     Paragraphs one through ten are re-alleged and incorporated as though fully set forth herein.

Use of the Mails

12.     From between in or about December, 2000, through in or about May, 2002, in the District of Columbia and elsewhere, defendants SIMMONS, EMOR, and others whose identities are known and unknown to the Grand Jury, did knowingly devise a scheme and artifice to defraud Gateway of monies by means of false and fraudulent pretenses and representations, and for the purpose of executing such scheme did cause to be sent or delivered by the United Parcel Service, an interstate commercial mail carrier, the following matters or things:

| Count | Date | Description | Address |
|---|---|---|---|
| 2. | 9/4/01 | Eight boxes addressed to "Andrea Marshall" containing stolen Gateway computers and related components. | 103 G Street, S.W., Washington, D.C. |
| 3. | 2/20/02 | Four boxes addressed to "Charles Emor" containing stolen Gateway computers and related components. | 1129 6th Street, N.W. Washington, D.C. |
| 4. | 3/27/02 | Ten boxes addressed to "Charles Emor" containing stolen Gateway computers and related components. | 1129 6th Street, N.W. Washington, D.C. |

**(Mail Fraud, aiding and abetting, causing an act to be done,
in violation of 18 U.S.C. Sections 1341 and 2.)**

## COUNT FIVE – RECEIPT OF STOLEN PROPERTY

13.    On or about May 29, 2001, within the District of Columbia, EMOR bought, received, possessed, and obtained control of property of a value of $250 of more belonging to Gateway, consisting of a computer, which had been stolen, knowing and having reason to believe it was stolen, with the intent to defraud and to deprive Gateway of a right to and benefit of the property.

**(Receiving Stolen Property, in violation of 22 D.C. Code, Section 3232(a), 3232(c)(1).)**

## COUNT SIX – RECEIPT OF STOLEN PROPERTY

14.     On or about February 20, 2002, within the District of Columbia, EMOR bought, received, possessed, and obtained control of property of a value of $250 of more belonging to Gateway, consisting of a computer, which had been stolen, knowing and having reason to believe it was stolen, with the intent to defraud and to deprive Gateway of a right to and benefit of the property.

**(Receiving Stolen Property, in violation of 22 D.C. Code, Section 3232(a), 3232(c)(1).)**

TRUE BILL

FOREPERSON

Kenneth C Wanstein /JR

Attorney for the United States in

And for the District of Columbia

8