**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                        )
**UNITED STATES OF AMERICA**          )
                                                        )      **Criminal No.  1:06-CR-00064-JR**
                                                        )      **Trial:  December 18, 2006**
        **v.**                                          )      **Sentencing:  March 16, 2007**
                                                        )
                                                        )
**CHARLES EMOR**                            )
                                                        )
                        *Defendant.*            )
_____)

## DEFENDANT CHARLES EMOR'S REPLY TO THE GOVERNMENT'S OPPOSITION TO DEFENDANT'S RENEWED MOTION FOR MISTRIAL

The defendant Charles Emor, through undersigned counsel, respectfully submits this

Reply to the Government's Opposition to Defendant's Renewed Motion for Mistrial.  The

government's Opposition completely misses the point of defendant's motion.  The defendant's

argument both during trial, and in this renewed motion, is that the government's disclosure of

information concerning "Phase I" of the conspiracy did not put the defendant on notice that it

intended to present evidence connecting Mr. Emor to "Phase I" and to an additional 100

computers for which no discovery or notice had been provided.  The government, in its

Opposition, claims that Mr. Emor had notice of "Phase I" activities through Dwayne Simmons'

Statement of Offense and Memorandum of Interview ("MOI").  Yet neither of these documents

mentions Mr. Emor or indicates any involvement by him during this period, which, as discussed

below, resulted in unfair surprise and prejudiced the defense.  Thus, the variance in time between

the proof at trial and the indictment violated Mr. Emor's Constitutional rights and a mistrial should be granted.[1]

## I.     The Defense Never Waived its Mistrial Argument

The defense has not waived its Motion for Mistrial.  At the time the "Phase I" evidence was presented, the defense moved for a mistrial and the court, after hearing argument, reserved ruling.  Therefore, the motion remained pending before the court and the failure of either party to provide the requested authority can not be considered a waiver without further inquiry by the Court.

Throughout the trial, the defense remained steadfast in its objection to the admission of the evidence regarding "Phase I" of the conspiracy.  When the government's first witness, Mike Ralph, took the stand and testified about Mr. Emor's alleged involvement in "Phase I" of the conspiracy, an objection was raised.  (*See* Mot. for Mistrial at Ex. 4.)  During subsequent testimony regarding this phase, the defense continued to object to the admission of such evidence and the Court allowed the defense to have a continuing objection to any testimony relating to "Phase I."

The government argues in its Opposition that because the defense vigorously cross-examined and impeached the government's witnesses based on inconsistent statements between the discovery material and trial testimony, that the defense somehow waived its argument for a

---

[1]It is ironic that the government challenges the timing of the Renewed Motion for Mistrial, (*see* Opp. at fn 4), given the government's late filing of this Opposition without leave to do so.  Local Criminal Rule 47 requires that an opposition must be filed within 11 days of service of the motion, or at such other time as the Court may direct, or the Court may treat the motion as conceded. L. Cr. R. 47.  The defense filed its motion on January 3, 2007, and the government filed its opposition 20 days later on January 23, 2007.  Even if the time is calculated from January 9, 2007, the date on which the Court entered its Order directing the government to respond to this motion, the government should have responded on January 20, 2007.  Because that was a Saturday, the government had until Monday, January 22, 2007, to file its opposition.  See Fed. R. Crim. P. 45(a).  Thus, because the government failed to comply with the local rules, Mr. Emor respectfully requests that this court deem the Motion for Mistrial to be conceded by the government in accordance with Local Criminal Rule 47(b).

mistrial.[2]  Under the government's theory, once the evidence came in, the defense could only have preserved its mistrial argument by not impeaching or cross-examining the witness on this point.  Essentially, it had to let the evidence stand unchallenged.  According to the government, therefore, because the defense objected, moved for a mistrial, and, while the motion was pending, proceeded to vigorously defend its client at trial with evidence the Court had deemed admissible, it waived the mistrial argument.  Moving for a mistrial does not preclude the defense from cross-examining on this evidence until the judge rules on the motion.

In fact, the cases cited by the government in it's opposition undercut the argument propounded by the government.  In each of the cases cited by the government to support its waiver argument, the defense did not raise an objection to the admission of the evidence in question.  Rather, the evidence was admitted without objection and then, following a guilty verdict, the defense challenged the admissibility of the evidence.  *See U.S. v. Johnson*, 562 F.2d 649 (D.C. Cir. 1976) ("We believe that the District Court in this case offered appellant full opportunity to object to admission of the now disputed statements.  We also believe that the District Judge was right when at the §2255 hearing he said that appellant's failure to object or present evidence was 'a calculated piece of business.'"); *U.S. v. Smith*, 459 F.3d 1276 (11th Cir. 2006) (defense failed to object).

In this case, the defense timely objected to all testimony regarding "Phase I" of the conspiracy and moved for a mistrial.  Once the evidence was admitted, the defense proceeded to defend its client by cross-examining and challenging the accuracy of the admitted evidence.  No strategic decision was made to not challenge this evidence, it was challenged numerous times throughout the trial, and it was the basis for a mistrial motion that was never withdrawn.  Such

---

[2] The government also incorrectly states that, "the defendant convinced the Court to give a perjury instruction." (Opp. at 4.)  That is simply not true.  While the defense requested a perjury instruction, one was not included in the

actions do not constitute waiver of the defendant's motion for mistrial. *See, e.g., United States v. Harmon*, 194 F.3d 890, 899 (8th Cir. 1999) (finding that objection and moving for mistrial preserves the argument unless the motion is specifically withdrawn); *United States v. Montoya*, 782 F.2d 1554, 1556 (11th Cir. 1986) (finding argument for mistrial waived because the motion had been withdrawn).

## II. Evidence Regarding "Phase I" of the Conspiracy Resulted in a Fatal Variance of the Indictment that Prejudiced Mr. Emor's Right to a Fair Trial

Based on the facts presented at trial, the government bears the burden of showing an absence of prejudice to the defendant. *See United States v. Baucham*, 449 F.3d 167, 177 (D.C. Cir. 2006). The government has not met this burden.

The government argues that Mr. Emor was not prejudiced because he was only charged with "Phase II" of the conspiracy. That is the entire premise of the mistrial motion. While Mr. Emor was charged with "Phase II," the government produced evidence at trial linking Mr. Emor to "Phase I" and to an additional 100 computers allegedly purchased during that time period. The defense heard this evidence for the first as it was being presented to the jury. It is the introduction of that evidence, without notice and by surprise, that prejudiced Mr. Emor and violated his constitutional rights.

### A. Variance in Time Affected Mr. Emor's Substantive Rights

"A defendant is entitled to know what he is accused of doing in violation of the criminal law, so that he can prepare his defense, and be protected against another prosecution for the same offense." *United States v. Tsinhnahijinnie*, 112 F.3d 988 (9th Cir. 1997). Based on the information in the indictment and all information provided throughout discovery, the defense

final jury instructions.

4

learned that two members of the conspiracy had been involved in a prior conspiracy that began in 1998 and did not involve many computers. (*See* MOI at pg. 2, attached to Opp. at Ex. 3.) It was, therefore, the defense's belief that it was defending against a conspiracy, which began with two people in 1998, and that Mr. Emor's alleged involvement did not begin until late 2000. This belief was based on several pieces of evidence including: 1) the indictment which alleged that the conspiracy began in December 2000 (*see* Indictment at ¶ 7, attached to Opp. as Ex. 1); 2) the grand jury testimony of the Postal Inspector (*see* March 7, 2006, Newman Gr. Jury Testimony, attached to Mot. for Mistrial at Ex. 1); and Dwayne Simmons' MOI (*see* MOI, attached to Opp. at Ex. 3.) None of this evidence indicates that Mr. Emor was involved in "Phase I" of the conspiracy or even indicated that that phase involved as many as 100 computers.

This evidence was used to prepare a defense that would establish that two people began this conspiracy years before they had even met or heard the name Charles Emor, as indicated in the Opening Statement. (*See* Opp. at 3 *quoting* Defense Opening Statement: "The evidence will establish that in 1998, Simmons and Ralph agreed to steal computers. Mr. Emor did not know Ralph and Simmons in 1998.") Years later, as they were running out of customers and in need of money, they targeted Mr. Emor because they knew he needed a large amount of computers for his school and he became an unfortunate victim of this conspiracy. Thus, it is disingenuous for the government to argue that the defense had full knowledge of the charges and was not prejudiced by this additional three years worth of evidence that surprisingly involved Mr. Emor.

Second, the government claims that "the defendant had complete knowledge of the charges he faced because the uncharged phase of the conspiracy was identical to the charged phase except for an earlier date." (Opp. at 6.) It is impossible for Mr. Emor to have had "complete knowledge" of the charges he faced because he had no knowledge that the

government was going to allege that he was involved in this conspiracy beginning in 1998.  The evidence the government produced indicated that from December 2000-May 2002, Mr. Emor received approximately 50-60 computers.  During the first day of trial, the defense was shocked to learn that the government was introducing evidence to establish that Mr. Emor was "Phase I's" largest client and that he purchased somewhere near 100 computers during that time period. The allegations of "Phase I" and "Phase II" are not identical as "Phase I" involves double the amount of computers than the defense was prepared to defend.

Next the government stated that the defense was able to "prepare an effective defense to the charges he faced because he only faced charges relating to the second phase."  (Opp. at 6.) As discussed, *supra*, the entire defense strategy had to change once it learned of the 1998-1999 allegations.  Prior to the first day of trial, the defense had no idea, and no way of knowing, that the government would allege Mr. Emor had been involved during that time.  No defendant should ever have to appear in criminal court and learn of new evidence as it is being presented to the jury.  Yet, that is exactly what happened in this case since no documentary evidence, interview notes or grand jury testimony has ever been produced to indicate that Mr. Emor was involved at that time.  Unfortunately, while Mr. Emor had mounted a defense for the alleged 50-60 computers shipped from December 2000 through May 2002, the defense was not prepared to defend against an additional 100 computers shipped in a different time period and the defense was unable to overcome this surprise.

Incredulously, the government indicates that Mr. Emor was only convicted for his involvement in the second phase of the conspiracy.  (Opp. at 4.)  It is unclear how the government can make such a bold statement since the jury was presented with evidence that Mr. Emor received an additional 100 computers in 1998-1999.  The government has no way of

knowing what weight the jury gave this evidence, but it is aware that the jury heard the evidence and that it was available during deliberations. For all of these reasons, Mr. Emor's substantial rights were violated by the fatal variance between the proof at trial and the indictment.

### B.   Variance in Time is Material Once it Affects a Defendant's Substantial Rights

The government next argues that the variance should be disregarded since time is not a material element of the offense. (Opp. at 6.) The government's argument is irrelevant because it "overlooks the function of an indictment. A defendant is entitled to know what he is accused of doing in violation of the criminal law, so that he can prepare his defense, and be protected against another prosecution for the same offense." *Tshinhnahijinnie*, 112 F.3d at 991. The case cited by the government, *United States v. Laykin*, 886 F.2d 1534 (9th Cir. 1989), is consistent with this point. In *Laykin*, the defense argued that the indictment did not provide adequate notice of the charges because it contained an open-ended time frame. *See id.* at 1542. The court, however, noted that the overt acts listed in the indictment served to limit the time frame covered in the indictment and provided notice of the scope of the charges. *See id.* Therefore, the defendants were ultimately provided with notice of the charges against them and provided with an opportunity to defend against the time frame alleged and outlined in the indictment. *See id.*

Just the opposite occurred in this case since all of the overt acts listed in the indictment fell within the time frame set forth in the indictment. The surprise occurred at trial when the government presented testimony that Mr. Emor was involved in a conspiracy that began almost three years prior to the time alleged in the indictment and introduced additional evidence outside the time period of the events listed in the overt acts section of the indictment. The indictment did not provide any notice of those allegations, nor did the overt acts section broaden the time period by including acts in 1998 or 1999. Thus, the indictment failed to "furnish the defendant with a

sufficient description of the charges against him to enable him to prepare his defense." *Laykin*, 886 F. 2d at 1242.

The remaining cases cited by the government similarly do not support the argument that time is not material, because in each of the cases cited the variance between the evidence and the indictment was a matter of months, as opposed to years as in the instant case. *See U.S. v. Cochran*, 697 F.2d 600 (5th Cir. 1983) (only 50 day difference between evidence and indictment); *United States v. Paredes-Rodriguez*, 160 F.3d 49 (1st Cir. 1998) (13-day variance); *United States v. McKinney*, 954 F.2d 471 (7th Cir. 1992) (4 month variance); *United States v. Tunnell*, 667 F.2d 1182 (5th Cir. 1982) (5 month variance).

Once the variance between the proof at trial and the allegations in the indictment differ by a period of more than a year, courts tend to find that the variance is fatal. *See, e.g.*, *Tsinhnahihinnie*, 112 F.3d 988 (two year variance); *United States v. Ross*, 412 F.3d 771 (7th Cir. 2005) (4 year variance); *United States v. Rowe*, 2006 U.S. Dist. LEXIS 63830 (S.D.N.Y. Sept. 6, 2006) (two year variance). The variance between the time frame in the indictment and the proof at trial is almost three years. This variance is fatal as it violated Mr. Emor's constitutional rights and, thus, a mistrial should be granted.

### III.    Government is Attempting to Avoid its 404(b) Notice Requirement by Labeling this Evidence as "Intrinsic" Evidence

The government is not entitled to relieve itself of the 404(b) notice requirements by arguing that this evidence is intrinsic evidence and not extrinsic 404(b) evidence. *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000). If, as the government argues, the purpose of this evidence was to prove that the conspiracy started in 1998 and that Mr. Emor was involved at that time, then the indictment and the discovery, including the co-conspirator plea agreements and grand testimony, all should have informed the defense that this was the date the alleged conspiracy

began.  In fact, just the opposite is true.  All evidence provided to the defense indicated that Mr.

Emor's alleged involvement in the conspiracy did not begin until late 2000.  During trial, the

government acknowledged that it learned through interviews during its trial preparation that

Mike Ralph and others would testify that Mr. Emor was involved in 1998.   The government

knew that the defense was not aware of this change in the state of the evidence, but it

intentionally chose to not correct the misinformation that had been provided to the defense.  This

resulted in trial by surprise, which is exactly what the discovery rules seek to avoid.  *See* Fed. R.

Cr. P. 16, Advisory Comm. Note ("[B]roader discovery by both the defense and the prosecution

will contribute to the fair and efficient administration of criminal justice…by minimizing the

undesirable effect of surprise at trial.").

Thus, as it is disingenuous for the government to argue that the conspiracy began in 1998,

when all evidence provided to the grand jury and to the defense indicated otherwise, evidence

that Mr. Emor received another approximately 100 computers in a time frame prior to the start of

the conspiracy constitutes 404(b) evidence.

It appears, therefore, that the government is arguing that introduction of evidence to prove

that the conspiracy began in 1998 is an attempt to "complete the story" of the conspiracy.  Yet,

"there is no general 'complete the story' or 'explain the circumstances' exception to Rule 404(b)

in this Circuit."  *Bowie*, 232 F.3d at 929.  Thus, prior to offering this evidence the government

was required to provide notice to the defense, which it did not do.[3]

Improper introduction of 404(b) evidence in this case is not harmless error.  In *United States*

*v. Spinner*, 152 F.3d 950 (D.C. Cir. 1998), the court held that the improper admission of 404(b)

---

[3] Not only did the government fail to give notice, but it affirmatively denied that it would be introducing any 404(b) evidence.  (*See* Mot. for Mistrial at 3.)

evidence was not harmless since the prosecutor emphasized the evidence in his closing argument to the jury, did not otherwise have an overwhelming case, and a 404(b) limiting instruction was not provided. *See id.* at 961. Similarly, in the instant case, the government discussed "Phase I" in both the opening statement and closing argument, questioned both co-conspirators and the Postal Inspector about this phase, did not have an overwhelming case, and no limiting instruction was provided. Thus, introduction of the "Phase I" evidence can not be deemed harmless and the motion for a mistrial should be granted.

## CONCLUSION

By arguing that the "Phase I" evidence does not create a variance and is not 404(b) evidence, the government eviscerates Mr. Emor's Constitutional right to be informed of the charges against him and also his right to notice of all 404(b) evidence that will be offered at trial. The defense was prejudiced at trial by the surprise admission of this evidence and the government has failed to meet its burden that such evidence did not prejudice Mr. Emor's substantial rights. Thus, the Motion for Mistrial should respectfully be granted.

Dated: January 30, 2007                    Respectfully Submitted,

                                           _____/s/ WILLIAM R. MARTIN_____
                                           William R. Martin  (D.C. Bar # 465531)
                                           Shawn M. Wright (D.C. Bar # 458377)
                                           Kerry Brainard Verdi (D.C. Bar #478486)
                                           **Blank Rome LLP**
                                           600 New Hampshire Avenue, N.W.
                                           Washington, DC 20037
                                           Ph: (202 772-5800
                                           Fax: (202) 772-5858