1   somebody that it's illegal.

2   Second, the government must prove, and must prove
3   beyond a reasonable doubt, it's my burden, it's the government's
4   burden, it is a burden that is fully, completely, totally
5   accepted. Second element, proven beyond a reasonable doubt, the
6   government must prove the defendant intentionally joined in the
7   agreement. It is not necessary to find that he agreed to all
8   the details of the crime or that he knew the identity of all the
9   other the people the government has claimed were participating
10  in the agreement. A person may become a member of a conspiracy
11  even if that person agrees to play only a minor part, as long as
12  that person understands the unlawful nature of the plan and
13  voluntarily and intentionally joins in it with the intent to
14  advance or further the unlawful object of the conspiracy.

15  Well, the unlawful object of the conspiracy was to sell
16  stolen computers. He intentionally -- no one forced him to join
17  it, he didn't trip and fall into this conspiracy, he
18  intentionally joined this conspiracy.

19  Ladies and gentlemen, at the end of all the evidence
20  you will find, consistent with the evidence that's presented to
21  you, that he knew. He absolutely beyond a reasonable doubt
22  knew.

23  THE COURT: Thank you. Mr. Martin?

24  MR. MARTIN: Good afternoon. It's the last time I get
25  a chance to talk to you. And I want to say thank you. As lead

1    counsel on behalf of Charles Emor, Shawn Wright, and Kerry Verdi
2    and I say to you from the bottom of our hearts, thanks for
3    taking time out of such a busy schedule to come into this
4    matter, to devote your time and attention and to listen to this
5    case.
6         One of the things that gives me great pride in our
7    judicial system -- and I've been doing this for 30 years, a
8    number of years where I did it from this side of the table, a
9    number of years when I did it from that side of the table, and
10   we all have a defined role in our criminal justice system.  I
11   have a chance to travel all over the world, and I'm able to brag
12   about the system we have here in America, that it may not be
13   perfect, it may not always avoid mistakes, but it's the best
14   that there is.
15        And what makes it the best that there is is the law
16   says that somebody like Charles Emor, not "that man" -- that
17   man, like every one of us, has a name.  That man, like every one
18   of us, has the protection of the law to say that he is innocent
19   unless and until he is proved guilty beyond a reasonable doubt.
20        When you hear the government stand here and point at
21   Mr. Emor and say "that man," and the government says that he
22   should have known, and that these witnesses, that's not what a
23   trial is about.  It's about evidence, it's about convincing you
24   that the evidence that came from the witnesses on that witness
25   stand can convince you that he knew they were stolen.

1          As you sat in this jury box when this trial began and
2   you heard opening statements, and you may have thought, huh, he
3   may have done that.  Well, you haven't heard any evidence
4   sufficient to convince you that he did.
5          I would bet that many of you are still sitting here
6   thinking, what really happened here?  Proof beyond a reasonable
7   doubt?  Ladies and gentlemen, they have not met their burden.
8   We don't have to prove this case.  I don't have to stand here
9   and argue to you that I have proved that Charles Emor is
10  innocent.  They have that burden.
11         And you know, with the passion and the knowledge that
12  the government wants to stand here and argue to you, it would
13  have been great if they could have brought witnesses to come in
14  here and argue with such passion and knowledge.
15         What happened?  Some guys working security, who are
16  their witnesses, figured out a scheme to steal computers.  It
17  wasn't Mr. Emor.  These guys convinced each other that we can
18  get away with it.  They talk about a trial run?  And I asked
19  Mr. Ralph, what do you mean by a trial run?  You want to see
20  whether or not you get caught.  Yeah, we wanted to see whether
21  or not we got caught.  And they did not get caught.
22         We do not dispute on behalf of Mr. Emor that Gateway
23  had computers, that one, two, three, four or more of the
24  employees of Gateway were taking those computers out the back
25  door.  But somewhere in between the Tidewater area, the Hampton

1   area, their employees found people to say, hey, I can give you a
2   discount on these computers, and nobody has told you how
3   reasonable or unreasonable that discount was.  Nobody has told
4   you that a $1,000 computer, you heard the government say or a
5   witness say, some of these computers are worth $3,000.  Nobody
6   has told you what computer was $3,000.  Somebody has come in and
7   told you, we've kind of given you a summary, an average price of
8   a computer.
9            Ladies and gentlemen, Charles Emor is an innocent man.
10  If Gateway wants to come in here and sue him civilly, if they
11  want to say, we think you owe us some money on these computers,
12  that might be another issue for another jury.  This is not a
13  case where they have proved beyond a reasonable doubt that
14  Charles Emor knew, knew that those computers were stolen.
15           How do you know that?  You can't sit there and look at
16  it from the back end.  The government wants you to look at it
17  from the back end.  Well, he's got these computers.  If you use
18  your common sense, if you think about what happens every day in
19  America, when is the last time you ever saw anybody who is going
20  to buy stolen property with a check?  With a check.
21           Now, Mr. Austin wants you to believe that since there
22  were only nine, 10, 11, 12 checks, that the rest was in cash.
23  He's not testifying.  He can't tell you that.  People couldn't
24  even match up the checks back and forth, computers, computers,
25  computers.  These computers were purchased by checks.

575

1          Now, ladies and gentlemen, Mr. Emor is either very
2    naive or not so bright that he would pay for stolen property
3    with a personal check.  Come get me, here's my check for this
4    computer.  I would bet you if you used everyday common sense, if
5    you think back to any major case you've ever seen, nobody that
6    you know has ever, ever, ever paid for a stolen item with a
7    check.
8          And you know what they want you to rely on?  They want
9    you to rely upon two witnesses who are more than admitted
10   thieves.  And you know, as a little boy when I was growing up,
11   my family used to always say to me, the one reputation you never
12   want is the reputation as a thief.  Because once people know
13   that you're a thief, they know that you would do anything to
14   take property that doesn't belong to you.  You know, in other
15   societies they whack off and cut off the hand of thieves because
16   they're such despicable people.
17         Next to a thief is a liar.  Now, these aren't my
18   personal beliefs.  I'm not sitting here trying to give you
19   thoughts on that.  But they told you they were liars.  Now,
20   ladies and gentlemen, when you go back you have to decide one
21   critical thing.  Has the government met its burden in proving to
22   you beyond a reasonable doubt that Charles Emor knew that these
23   computers were stolen?
24         Let's go back to the scheme.  Where and how did this
25   scheme begin?  Mr. Ralph told you that it began when he knew he

576

1   could get these computers, and Mr. Simmons said he could get
2   them out. And you haven't even seen this Mr. DeGroat, the Guru.
3   Before you even try and put people in place -- I keep jumping
4   ahead of myself. What were you doing 6 years ago, 5 years ago,
5   4 years ago? If you don't think about something for three
6   years, do you remember it? Think about that. These men came in
7   here and said that although their homes were raided back in '02,
8   they weren't interviewed until '05, and they come into court in
9   '06. But we've got clarity, we remember what happened. They
10  don't remember. They know that they've got to come in here and
11  dance or sing for their supper. They've got to come in here and
12  give the government what they want.
13         Why? Because they got caught with their hand in the
14  cookie jar. And in this federal system, in our federal criminal
15  justice system, once you get caught with your hand in that
16  cookie jar, unless you can give them somebody else, you go to
17  jail. And both of those men told you that under the
18  guidelines -- and there's a thing called the federal sentencing
19  guidelines -- if you're caught, and they both told you, under
20  these federal guidelines, I'm going to jail unless, unless I get
21  a word from the government that says, I substantially assisted.
22  It's like the old monopoly game, get out of jail free card. If
23  they can give him that word, they get out of jail. They get
24  probation. But they can't do it unless they can put somebody's
25  head on a platter and deliver it to them. And that's Mr. Emor.

577

1                You know, you would think that the government would
2      come into this case and tell you that these people were
3      believable.  But look at the outright lies, outright lies.
4      Unnecessary?  Why would Mike Ralph come in here and say I loaned
5      Mr. Emor $6,000?  He's giving me checks back.  I've got checks
6      to you, Mike Ralph, we've got checks to you from Mr. Emor.  What
7      are they for?  I loaned him $6,000.  He gets in here and tells
8      you, that's a bold lie.  He never loaned me money.  I never
9      loaned him money.  That was not a payback.  I just lied.
10               The government wants you to know that when Mr. Marshall
11     appeared in the courtroom, he told them the conspiracy began in
12     2000, 2000.  When the agent testified at the grand jury, she
13     told you she thought it was 2000.  That was March of '06.
14     Somewhere between March of '06 and December of '06, someone else
15     has come in and said, oh, no, that date is not right.  It was
16     1998.  And how do they know it?  Because one of the people
17     convicted has come up and said, I just remembered, up here in my
18     mind, we don't have any documents to prove it, we can't tell you
19     the exact date, we can't tell you how many computers, we can't
20     tell you how much money, but back in '98, there was a phase 1.
21               So they lied.  They lied to them.  And you heard all of
22     them say that lying to a federal agent is a crime.  They're not
23     being prosecuted.
24               MR. AUSTIN:  Objection.
25               THE COURT:  Overruled.

1   MR. MARTIN: Ladies and gentlemen, they lied under oath
2   and they lied with impunity. Don't let them get away with it
3   again. They are not worthy of belief. You don't have to make
4   them find these people guilty. It's their job to prove it to
5   you.
6   You know, when Michael Ralph came in this courtroom,
7   the first thing he said to you, why did you admit your guilt?
8   There was no way around it. You remember when I asked him,
9   you're telling this jury, if you could have lied your way around
10  it, you would have done that, wouldn't you? Absolutely. But
11  you couldn't? No, they had me on this one, so I had to tell the
12  truth.
13  But he didn't tell the whole truth. He skewed that
14  truth so that he could protect anybody that he wanted, and he
15  still did not tell you that it was Mr. Emor.
16  Ladies and gentlemen, the government called a number of
17  witnesses. Take a minute. It's not like it's my witness. The
18  judge will tell you, it's not my witness, it's not the
19  government's witnesses. These are witnesses. So when they
20  bring in somebody like Mr. Ahmed Gabr, and Mr. Gabr comes in and
21  tells you that I set up the computers, now they attack him. We
22  didn't call that man. They thought they could call him and say,
23  what did Mr. Emor tell you? What did he tell you Emor told you.
24  I'm getting these on a discount, I'll give you the same
25  discount. There's been no testimony in this case that Mr. Emor

1  tacked on another 200, 300, $400.  He told the same people, give
2  that same discount to Mr. Gabr.
3         And Mr. Gabr bought the computers.  He's not out there
4  selling these computers on the street.  He had friends and
5  associates who gave him information, i.e. addresses.  He passed
6  it on and he passed on the same good deal that he thought that
7  he was receiving.  Now we all know it's stolen.
8         In your everyday life, a mistake should not be a crime
9  unless in your heart and in your mind you know that he knew he
10 was committing a crime.  Did Mr. Emor unwittingly receive these
11 computers?  Maybe.  Was this a good deal that should have told
12 him, you know, Charles, think about that.  Well, who is the
13 source?  Orlando Marshall, a social worker.  You saw
14 Mr. Marshall.  Mr. Marshall said he's got a master's degree, and
15 from that he knew Charles Emor.
16        These guys aren't hanging out in the street smoking
17 dope, they're not out here playing at the clubs, they're working
18 at a social agency for kids.  He thinks he can trust Orlando.
19 And Orlando Marshall tells him, hey, I can introduce you to
20 somebody who can help you get a discount.  The only person who
21 did not know that that person was a thief was Charles Emor.
22        Now, ladies and gentlemen, one of the things that I
23 know that during the course of the trial I did not get a chance,
24 and my colleague Shawn Wright was doing the opening statements,
25 I normally would say to you in advance that if at times you see

1  me making a lot of objections, I think you did during the course
2  of the trial, my job as a lawyer is to do just that.  If at
3  times you see me get excited, and you see the judge address
4  either the government or address me and tell us either to sit
5  down or stand up or cut it off, that's his job.
6        Your job is now to get rid of the thoughts of all of
7  what we've done and think of what you've heard during this
8  trial.  But if there's anything that I've done that you think,
9  you know, Mr. Martin is a little aggressive or a little shy, you
10 know, I apologize to you.  But I want you to know that my job,
11 unlike yours, unlike the government's, unlike the court's, my
12 job is to defend the civil rights and the liberty, we're talking
13 about the liberty, the freedom of another human being.  So if
14 you see me fighting vigorously and zealously, I took the same
15 oath that the government took, the same oath that the judge
16 took, to defend the Constitution and to represent my client to
17 the best of my ability.
18       When I walk into the courtroom, I feel like I can do
19 that.  When I stand before you, I think I'm doing my job.  But
20 as I get ready to sit down, I always wonder, was there something
21 that I could have done just a little better to protect the
22 rights of my client.  I don't know that there is.
23       You know, when we talk about those witnesses, you talk
24 about Leonard Ozoemena.  They want you to think that that's our
25 witness.  Mr. Ozoemena said the same thing, I'm not a personal

1  friend. Mr. Gabr said I'm not a personal friend of Mr. Emor's.
2  Nobody has ever come in here and told you, other than the
3  government, that Charles Emor goes by any other -- Charles
4  Emerson, nobody has told you that. Everybody who knows him says
5  that's not the Charles we know. No.
6       Nedal Shaer and Mohammed Sobhani, who bought those
7  computers, what did they tell you? It wasn't that great a deal.
8  It may have been 20, 30 percent. It was a good deal, and I took
9  advantage of it. That's what Mr. Emor did.
10      And you know, ladies and gentlemen, you might sit here
11 in hindsight -- and everybody tells you hindsight really is
12 20/20, very clairvoyant. You have to figure out at the time
13 that Mr. Emor wrote those checks, that you'll go back and see,
14 Mike Ralph, $1,800, Charles Emor, 3450 Toledo Terrace,
15 Hyattsville, Maryland. So if the police want to know who's
16 buying the computers, the only person paying by check has been
17 Mr. Emor.
18      What about the phone records? What can I tell you?
19 They're calling back and forth to each other. Nothing. You
20 know, if you sit there and you wonder why do these people lie,
21 they lie because they want a good deal. What did the people
22 from UPS or Gateway -- sorry, Gateway tell you. Not much you
23 can take back to the jury room that helps you in this matter.
24      What did the person from the tax division tell you?
25 Not much really. Think about it again. On a tax form, if

1  somebody is stealing computers knowingly, are they going to put
2  the name of their contact for the IRS to look at?  One of the
3  things we all fear is somebody looking at our tax returns and
4  doing an audit.  We all know that somebody might look at that
5  tax return, and if there's something you do not want people to
6  know, you don't put it on a tax return.  He's got Mike Ralph
7  right on there.  He's not hiding Mike Ralph.  He's telling it
8  for the world to know.
9       Might their amount be wrong?  Maybe they didn't gather
10 the checks for that limited time period.
11      And you know something, when the government was talking
12 about 35 computers, well, think about it.  The indictment that
13 you have alleges from December of 2000 through May of 2002,
14 approximately 18 months.  Let's say there's a computer, two
15 computers a month.  That's 36 computers.  Nobody says it's 20
16 computers a day coming through those doors.  Different
17 addresses?  The school has six addresses.  They're all in a row,
18 1126, 1128, 1130, 1129, 1132.
19      Mr. Emor shipped them to Ms. Edwards's home.  One of
20 the things I found, ladies and gentlemen, I know you were not
21 comfortable with it either, the casual way that Mike Ralph
22 referred to Ms. Edwards's body.  I liked her behind.  Told me
23 Mr. Emor was hitting on her, they had an intimate relationship.
24 He has no respect whatsoever for basic human dignity.  He's a
25 liar and he came in here trying to embellish this whole story.

1          One thing that I will submit to you that, ladies and
2  gentlemen, you have to consider when you go back there, Judge
3  Robertson is going to tell you that you may consider whether a
4  witness who has entered into a plea agreement has an interest
5  different from any other witness.  A witness who realizes that
6  he may be able to obtain his or her own freedom, which is
7  exactly what they're doing, that he or she may be able to obtain
8  their own freedom or receive a lighter sentence by giving
9  testimony may have a motive to lie.
10          Now, if you couple that with the fact that they're
11  admitted liars, I'll continue.
12          The testimony of a witness who has entered into a plea
13  agreement should be received with caution and scrutinized with
14  care.  You should give the testimony such weight as it's
15  entitled to receive.  If you give the testimony of Mike Ralph
16  and Orlando Marshall that type of scrutiny, there is no other
17  evidence.  There's no problem, ladies and gentlemen, with you
18  going back there and saying, you know, the government did what
19  they -- they did their job.
20          Think about what the agent said from the witness stand
21  in response to questions from the government.  Did you have a
22  reasonable suspicion of what was going on?  My god, if you were
23  able to convict people in here with a reasonable suspicion, it
24  would completely change the body of law that we have here in
25  America.  Her suspicion is enough to arrest Mr. Emor, her

1  suspicion is enough to go to the grand jury, and they did that.

2  But between the grand jury and trial, they have to then
3  come up with a different quantum, a different amount, a
4  different measurement of proof. They now have to prove beyond a
5  reasonable doubt that Charles Emor knowingly committed this
6  alleged crime.

7  What does that mean, beyond a reasonable doubt? I'll
8  give you an example. If you have a document that you need
9  somebody to verify, if you have one of your most critical or
10 crucial matters of your life, are you going to take the word of
11 Mike Ralph or Orlando Marshall when you go back there? If those
12 are the people sitting here telling you, here's where to go,
13 you're going to pause.

14 Reasonable doubt? When you left home this morning, and
15 some of you may have turned the iron on to iron something, when
16 you got to work and you got in your car and wondered, did I turn
17 the iron off? Of course you did. We all have those moments
18 when we think, I don't know if I did or not. Maybe I ought to
19 go back. If you're thinking in your mind, I don't know if I
20 left that iron on or not, that's reasonable doubt.

21 And ladies and gentlemen, I submit to you that in this
22 case the government has not, not proven its case beyond a
23 reasonable doubt.

24 One of the things that I will argue different from the
25 government, I don't find anything about this case laughable.

1  It's frightening.  It's as serious as anything you do in your
2  life.  Laughable?  There's nothing laughable about Mr. Emor,
3  there's nothing laughable about any testimony that came from the
4  witness stand, and there's nothing laughable about what you're
5  getting ready to do.  This may be the most critical and most
6  important decision that you make in your life.
7         One of the questions that Judge Robertson asked before
8  you took the witness stand is do you have any trouble judging
9  from religious or moral reasons the guilt or innocence of
10 another human being.  It ain't laughable, folks.  When you go
11 back there, we ask you to give a verdict that is the only
12 verdict that is fair, just, and pertaining to the evidence in
13 this case.  That's not guilty.
14        When Judge Robertson swore you in on Monday and he told
15 you that you would be here through Thursday, and for those of
16 you who have not done your holiday shopping, and try to get you
17 out of here Friday, I didn't think we would be here on Wednesday
18 with closing arguments.
19        Thank you, Your Honor, for moving this trial along.  I
20 think all of us can now get ready for the holiday season.  And
21 as I sit down, I say to you again, I thank you very much.  You
22 have paid attention in this case.  When you come back with your
23 verdict, I ask you that it be a verdict of not guilty, and you
24 allow Mr. Charles Emor to go back to society with us as an
25 innocent man.  I thank you very much.