UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Criminal No. 06-0064-02 (JR) |
| : | |
| CHARLES EMOR, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING
- SECTION III, FILED UNDER SEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits the following memorandum in aid of sentencing in the above-captioned case. For the reasons set forth herein, the government respectfully requests that the Court impose a sentence in accordance with the factors set forth in Tile 18, United States Code, Section 3553 and the U.S. Sentencing Guidelines. The Government also requests that this memorandum be placed under seal.

**I.     BACKGROUND**

On March 7, 2006, a federal grand jury for the District of Columbia returned a six-count Indictment charging Defendant Emor and Dwayne Simmons with Conspiracy to Mail Fraud, in violation of 18 U.S.C. § 371 (Count 1); Mail Fraud, in violation of 18 U.S.C. §1341 (Counts 2 through 4); and Receipt of Stolen Property, in violation of 22 D.C. Code § 3232. The case against Defendant Emor proceeded to trial. Prior to the trial, the Government dismissed all counts of the Indictment except for Count 1, which charged the Conspiracy.

On December 21, 2006, following three days of trial, a jury found Defendant Emor

guilty on the sole charge presented. Evidence at trial established that from approximately December 2000 until May 2002, Defendant Emor and his co-conspirators Dwayne Simmons, Michael Ralph, and Orlando Marshall conspired to obtain money by stealing Gateway computers from the Gateway Hampton, Virginia, distribution center and selling them throughout the Washington Metropolitan area and elsewhere. Emor placed orders for approximately 68 stolen Gateway computers with Ralph. He subsequently received multiple shipments of Gateway computers via the United Parcel Service at both an address in Maryland and at the SunRise Academy in Washington, D.C. SunRise Academy is a D.C. Charter School for learning and emotionally disabled boys located at 1130 Sixth Street, N.W., Washington, D.C.[1] Defendant Emor is the school Director. Emor also had multiple shipments sent directly to his customers. Approximately 8 computers were shipped to an apartment rented by Emor, 26 computers were shipped to other persons at Emor's direction, and 36 computers were shipped to the school.[2]

Jalloh is a co-worker of Marshall in their employment as social workers in the District of

---

[1] According to the Sunrise Academy website, the school provides educatuional remediation for a wide range of learning and emotional disabilities for boys aged 7 to 22. See, http://www.sunriseacademy.org/

[2] Post Indictment in this case, Postal Inspector Merydith Newman, U.S. Postal Inspection Service, toured Sunrise with Emor's former counsel, Shawn Wright. At that time the defense was urging the government to dismiss the charges and was attempting to impress the government with the school. Newman observed no Gateway computers in the school computer lab. Emor had apparently disposed of the subject computers at the school months prior to trial. Disposition of the computers sent to the school remains unknown to the government.

Columbia. Marshall is Ralph's cousin. Emor and Marshall were friends and had worked together at Fedora School. Initially, Marshall acted as a go-between for Emor to order stolen computers form Ralph. Subsequently, Marshall introduced Ralph to Emor so that Emor could contact Ralph directly to obtain stolen computers. Simmons worked Gateway as a shipping supervisor. He was the person who diverted all the stolen computers from Gateways inventory and shipped them to Emor and others.

Marshall and Ralph entered pre-Indictment plea agreements with the United States and agreed to cooperate with the government. They pleaded guilty and testified as government witnesses at Defendant Emor's trial. Jalloh did not know Emor. He was the first defendant in the case who agreed to cooperate with the Government. He entered a pre-indictment plea agreement, pleaded guilty, and provided substantial cooperation to the Government in connection with the case. As previously stated, Simmons and Emor were Indicted. Upon notification that the grand jury had returned an Indictment, Simmons immediately surrendered himself to the case agents and expressed his desire to plead guilty. The matter was extenuated while attempts were made to obtain counsel. Subsequently, Simmons entered a plea agreement with the United States, pleaded guilty, and he testified at Defendant Emor' trial. All the guilty pleas were entered before the Honorable Henry H. Kennedy, United States District Court Judge.[3]

---

[3] Each of the co-conspirators has been sentenced as follows: Dwayne Simmons was sentenced to 5 years of probation and restitution of $50,000.00; Orlando Marshall was sentenced to 3 years of probation and restitution of $5,000.00; Abdul Jalloh was sentenced to 5 years of probation and restitution of $16,000.00; and Michael Ralph was sentenced to 5 years of probation and restitution of $40,000.00.

**II.     SENTENCING CALCULATION**

    A.     Statutory Maximum

Defendant was convicted of Conspiracy to Commit Crimes Against the United States, in violation of 18 U.S.C. § 371.  The maximum sentence for this Class D felony is 5 years imprisonment, a fine of $ $250,000.00 or a fine of twice the pecuniary gain or loss pursuant to 18 U.S.C. § 3571(d), a $100 special assessment, a 3 -year term of supervised release, an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made.

    B.     Sentencing Guideline Calculation

The Government has conferred with Defense Counsel and alerted the U.S. Probation Officer that the correct loss amount in this case is $69,000.00.  Therefore, the guideline calculations applicable to this case differ from those presented in the Presentence Investigation Report (PRS) dated march 13, 2007.  This corrected loss amount decreases the level of the Specific Offense Characteristics to from 10, per the PRS, to 6.  With this adjustment, the parties agree that the defendant's total offense level is 14.  See PSR ¶¶ 25-33.  The Presentence Investigation Report (PSR) correctly lists defendant's criminal history as Category I.  See PSR ¶ 63.  Therefore, the guideline range for defendant is 15-21 months, Zone D.  See PSR ¶ 124.

    C.     Restitution

Restitution in this case is in the amount of $69,000.00.  This figure reflects the most conservative price per computer unit, that is $1,000.00 per computer.  Restitution should be made to: Gateway Computers, 7565 Irvine Center Drive, Irvine, CA 92618.

    D.    <u>Prior Criminal History</u>

Defendant has a criminal history score of zero points. He has one juvenile adjudication for a traffic offense and four arrests as an adult which include two traffic offenses. See PSR ¶¶ 34-40.

**SECTION III, FILED UNDER SEAL - SEE ATTACHMENT**

IV.    **FACTORS TO BE CONSIDERED IN IMPOSING SENTENCE**

In accordance with the factors enumerated in 18 U.S.C. § 3553, the Government submits the following information for the court's consideration in determining the appropriate sentence in this case:

    1.  <u>The nature and circumstances of the offense.</u>

The evidence in this case established that this was an on-going course of criminal conduct spanning approximately 18 months, and was motivated by Defendant Emor's greed to obtain and sell to others or use for his own purposes stolen property belonging to Gateway. The scheme involved sophisticated means in that computers were shipped, at Defendant Emor's direction, to various addresses across several states. The fact that some of the stolen computers may have been used at the school in no way justifies or minimizes the harm done. Defendant Emor had plenty of money to run SunRise Academy and to legitimately purchase any computers he may have needed. SunRise Academy is a 501(C)(3), not-for-profit business. During a debriefing meeting, Defendant Emor advised the case agents and Assistant U.S. Attorney Austin that he bills the District of Columbia Government approximately $650,000.00 per month for

school services.  After paying payroll and all expenses he has approximately $300,000.00 net revenue per month.  Obviously, Defendant Emor could have legitimately purchased computers for the school had he chosen to do so.  In addition, he has used the vast school revenues to accumulate numerous real estate holdings.  Some of these properties are held in the name of the school.  Other properties are held jointly in the school's name and in Emor's name.  It is noted that Defendant Emor did not disclose to Probation Officer Kelly Kraemer-Soares that he was a co-owner of certain properties.  Nor did he tell her that he receives rental income from the properties, which during the debriefing he claimed to be in payment for reimburse of his initial outlay of $50,000.00 to start the school.  (See PRS ¶¶ 53 and 58).

    2. <u>The history and characteristics of the defendant.</u>

The defendant is an educated individual and a savvy business man.  Defendant Emor lied about his citizenship when he was arrested.  He is a Nigerian citizen.  He entered the United States via the port of Baltimore on December 17, 1983.  His true name is Charles Ike Emenogha.  He also lied to U.S. Probation Officer Kraemer-Soares about his citizenship and apparently lied about having attended Catholic school in the U. S. Virgin Islands.   (See, PRS FN2 and ¶¶ 21and 29).

    3. <u>The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.</u>

This is a serious offense which resulted in significant and continuing financial losses to Gateway.  Since this case involves the Director of a D.C. Charter school, members of the public will be interested to know the sentence Defendant Emor receives.  A period of incarceration, in accordance with the advisory U.S. Sentencing Guidelines,  will send a clear message to other individuals similarly motivated to steal that this kind of conduct could subject them to

prosecution and stiff punishment, including a prison term.  Conversely, a sentence that is too light could send the message that this kind of criminal behavior is not dealt with seriously.  Such a sentence will not promote respect for the laws.  A sentence in accordance with that provided by the U.S. Sentencing Guidelines will provide just punishment for the offense, because it takes into account the significant loss amount, the harm to the victim company, the sophisticated nature of the offense, and the obstruction of justice component.

    4.  <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

Imposition of a period of incarceration will temporarily incapacitate Defendant Emor from any criminal activity and will also specifically deter him from future criminal conduct.  In addition, other members of the public similarly situated may reconsider such criminal behavior when weighing the consequences that can occur, including arrest, prosecution, conviction, and incarceration.

    5.  <u>The need for the sentence imposed to protect the public from further crimes of the defendant.</u>

This case does not involve a violent crime.  Therefore the traditional notions of "protection" of the public are not impacted.  The theft here was from a corporate seller of goods; Gateway.  The losses that Defendant Emor caused result in harm to the economic well being of the victim company.  Such losses impact corporate earnings and diminish shareholder income.  In addition, the public often suffers when such thefts result in higher sales prices.

6. <u>The need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

This criteria is not relevant here as defendant has no known medical issues and is an educated individual.

## V.   CONCLUSION

Defendant is facing 15-26 months incarceration pursuant to the advisory U.S. Sentencing Guidelines. The government submits that given the totality of the circumstances here it would be reasonable for the Court impose a sentence at the upper end of that range.

Respectfully submitted,
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____/s/_____
SHERRI L. SCHORNSTEIN.
D.C. Bar # 415219
Assistant U.S. Attorney
Fraud & Public Corruption Section
555 4th Street, N.W.
Washington, D.C. 20530
(202) 514-6956

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Government's Memorandum in Aid of Sentencing, was served on counsel for Defendant, Danny Onorato, David Schertler, and Peter Taylor, Schertler & Onorato, LLP, 601 Pennsylvania Ave., N.W., North Building 9th Floor, Washington, D.C. 20004-2601, this <u>13</u>th, day of August 2007, delivery via courier.

_____/s/_____
SHERRI L. SCHORNSTEIN
Assistant U.S. Attorney